UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JESSE ARONSTEIN, Individually and on Behalf of All Others Similarly Situated | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil No. 15-12864-MGM |
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY and C.M. LIFE INSURANCE COMPANY, | * * * * | |
| Defendants. | * | |

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTION TO DISMISS
(Dkt. No. 25)

April 22, 2016

MASTROIANNI, U.S.D.J.

## I.    INTRODUCTION

Jesse Aronstein ("Plaintiff") has filed a putative class action against Massachusetts Mutual

Life Insurance Co. ("MassMutual") and C.M. Life Insurance Co. ("C.M. Life" and, collectively with

MassMutual, "Defendants"). The case arises out of Defendants' sale of an annuity to Plaintiff and all

other purchasers of that annuity. Plaintiff alleges unjust enrichment (Count I), fraudulent

misrepresentation (Count II), and violation of Chapter 93A of the Massachusetts General Laws

("Chapter 93A") (Count III). Defendants have filed a motion to dismiss. For the reasons set forth

below, Defendants' motion is allowed with respect to Counts I and III and denied with respect to

Count II.

## II.    JURISDICTION

Plaintiff is a resident of New York. Defendant MassMutual is domiciled in Massachusetts,

and Defendant C.M. Life is domiciled in Connecticut. Plaintiff asserts that the court has subject

matter jurisdiction over this putative class action pursuant to 28 U.S.C. § 1332(d)(2)(A) because Plaintiff and numerous class members are citizens of states different from Defendants and because the aggregate amount in controversy exceeds $5,000,000. Defendants do not challenge this assertion.

### III.   FACTS AS ALLEGED BY PLAINTIFF

In January 2004, Plaintiff received written marketing materials from Defendants regarding a fixed deferred annuity (the "Annuity"). (Dkt. No. 11, Am. Compl. ¶ 14.) The marketing materials represented that the interest for the Annuity "will be credited at a . . . rate [that] will never be less than 3%." (*Id.* ¶ 14.) On or about January 7, 2004, Plaintiff purchased the Annuity for $25,000. (*Id.* ¶¶ 2, 15.) Plaintiff subsequently received a "Contract/Certificate Package" for the Annuity, which contained a cover page, an 18-page certificate, and a single-page endorsement. (*Id.* ¶ 16.) The certificate defined the "Minimum Guaranteed Interest Rate" as 3%. It also provided that the interest rate "will never be less than the Minimum Guaranteed Interest Rate." (*Id.* ¶¶ 18-19.) The endorsement, however, stated that "the Minimum Guaranteed Interest Rate has been changed to 1.5%." (*Id.* ¶ 20.) This contradicted both the certificate and the marketing materials for the Annuity. (*Id.* ¶ 21.) The endorsement was signed by representatives of MassMutual, but not by Plaintiff. (*Id.* ¶ 20.)  The first page of the certificate stated Plaintiff had the right to examine and return the certificate for any reason within 10 days for a full refund. (*Id.*, Ex. C.) In early 2004, Defendants sent Plaintiff a transaction confirmation, which confirmed Plaintiff's initial purchase payment at a credited interest rate of 4%. (*Id.* ¶ 22.)

From 2004 through 2015, Plaintiff received periodic statements regarding the Annuity. The statements contained numerous pieces of information related to the Annuity, but they did not disclose the interest rate paid for a given period. (*Id.* ¶ 23.) In or around January 2015, Plaintiff received the annual statement for 2014. Although it did not set forth the interest rate, Plaintiff calculated the interest rate for 2014 and determined that the interest earned reflected a rate of only

about 2%. (*Id.* ¶ 24.) Prompted by this discovery, Plaintiff examined the annual statements for previous years and discovered that the interest rate had been less than 3% (but higher than 1.5%) for every year since 2011. (*Id.* ¶ 25.) On January 23, 2015, Plaintiff contacted MassMutual and requested that the Minimum Guaranteed Interest Rate be restored to 3% and his account be credited for the shortfall. (*Id.* ¶ 26.) On February 18, 2015, MassMutual sent Plaintiff a letter denying his request. The letter relied upon the endorsement setting the Minimum Guaranteed Interest Rate at 1.5% and admitted the interest rate on the Annuity had been below 3% (but above 1.5%) every year since 2011. (*Id.* ¶¶ 27-28.)

Defendants did remove the language guaranteeing an interest rate of 3% from their marketing materials, but not before Plaintiff and thousands of other consumers had purchased the Annuity. (*Id.* ¶ 29.) Plaintiff contends that Defendants "worked in concert to falsely advertise and sell the Annuity." (*Id.* ¶ 30.) Plaintiff seeks to represent a class consisting of all purchasers of the Annuity who have been paid or credited with an interest rate below 3%, and Plaintiff sets forth the requisite allegations for maintaining a class action. (*Id.* ¶¶ 31, 33-43.) On June 30, 2015, Plaintiff initiated this action. (Dkt. No. 1.)

## IV.    STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, a complaint must allege facts that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations in the complaint must "nudge[] [the] claims across the line from conceivable to plausible." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Courts are not required to accept as true

3

allegations in a complaint that are legal conclusions. *Id.* at 678. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Therefore, in assessing a claim's plausibility, the court must construe the complaint in the plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of the plaintiff. *See San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá*, 687 F.3d 465, 471 (1st Cir. 2012).

## V.    DISCUSSION

Plaintiff brings three claims. Count I is a claim for unjust enrichment based on Defendants' alleged misconduct in marketing and selling the Annuity at a Minimum Guaranteed Interest Rate and then reducing that rate. Count II is a claim for fraudulent misrepresentation based on Defendants' marketing and sale of the Annuity. Count III claims unfair or deceptive trade practices in violation of Chapter 93A; this claim is also predicated upon alleged violations of FTC and Massachusetts Attorney General regulations.

In support of their motion to dismiss, Defendants argue that each of Plaintiff's claims is barred by the applicable statute of limitations. In addition to the statute of limitations argument that applies to all claims, Defendants argue that Count I fails to state a claim because an unjust enrichment claim cannot proceed when the matter is governed by a valid contract. Defendants also argue that Count III should be dismissed because the substantive law of New York, and not Massachusetts's Chapter 93A, applies to Plaintiff's claims.

### A.    Unjust Enrichment (Count I)

Leaving aside the question of the statute of limitations, Defendants argue Count I should be dismissed because an unjust enrichment claim cannot be maintained when it is rooted in a valid and enforceable contract. When the subject matter of a claim is governed by a contract, there is no cause of action for unjust enrichment. *See IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268,

274 (N.Y. 2009). Unjust enrichment is a quasi-contract claim designed to prevent injustice in the absence of an actual agreement between the parties. *See id*. A plaintiff may not recover under an unjust enrichment theory "[w]here the parties executed a valid and enforceable written contract governing [the] particular subject matter." *Id.*

Plaintiff argues that the subject matter of his claim is Defendants' "misleading advertising and deceitful marketing," which is not "governed by the contract." (Dkt. No. 30, Pl. Mem. Opp. Mot. to Dismiss, at 4.) This argument is unpersuasive. If this were the case, then any unjust enrichment claim could be maintained despite the existence of a contract by pleading that the contract does not regulate improper behavior. Plaintiff cites a case in which unjust enrichment claims based on insurance commissions were allowed to proceed when the mortgage between the parties did not contemplate the payment of commissions, *see Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140-41 (1st Cir. 2012), as well as a case in which an unjust enrichment claim was able to proceed when the parties' contract did not address how to resolve a dispute over the refund of management fees, *see Whitman & Co. v. Longview Partners (Guernsey) Ltd.*, --- F. Supp. 3d ---, 2015 WL 6043573 (D. Mass. Oct. 15, 2015). These cases are distinguishable because they involved disputes over how to distribute payments that were not contemplated by the parties' contracts, whereas the instant claim centers on an alleged violation of the parties' contractual agreement via Defendants' unilateral alteration of the contract's terms. It may be plausible to assert that a contract does not govern unforeseen monetary distributions, but it is not plausible to claim that a contract does not contemplate the violation of its own terms.

Plaintiff also argues that the claim should be allowed to proceed because he has the right "to plead alternative and even inconsistent legal theories, such as breach of contract and unjust enrichment, even if [he] only can recover under one of these theories." *Vieira v. First Am. Title Ins. Co.*, 668 F. Supp. 2d 282, 295 (D. Mass. 2009). That is certainly true, but it does not mean that

Plaintiff's pleading is successful in this case. Plaintiff did not bring a claim for breach of contract, and because there is a valid and enforceable contract, Plaintiff's unjust enrichment claim must fail. Count I is therefore dismissed.

### B.    Fraudulent Misrepresentation (Count II)

The parties disagree over whether the Massachusetts or New York statute of limitations should apply to Count II, but this dispute proves immaterial. Massachusetts applies a three-year statute of limitations to fraud claims. Mass. Gen. Laws ch. 260, § 2A. Massachusetts employs the "discovery rule" that tolls the time a claim accrues until the plaintiff "knew or reasonably should have known that [the plaintiff] may have been harmed by the conduct of another," *Bowen v. Eli Lilly & Co.*, 557 N.E.2d 739, 741 (Mass. 1990), and the discovery rule applies to fraud claims, *see McEneaney v. Chestnut Hill Realty Corp.*, 650 N.E.2d 93, 97 (Mass. App. Ct. 1995). New York also applies the discovery rule. Under New York law, an action for fraud must be commenced within "the greater of" (1) six years after "the cause of action accrued," or (2) two years after the plaintiff "discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8).

Thus, Plaintiff receives the benefit of the discovery rule under the laws of both states, with Massachusetts law giving him three years from the date of reasonable discovery and New York law giving him two years from that date.[1] If Plaintiff reasonably should have discovered the alleged fraud in either January 2004 (when he received the endorsement) or January 2012 (when the annual statement for 2011 made it possible to calculate that the interest rate had dipped below 3%), then his

---

[1] The first prong of the New York standard is of no help to Plaintiff, because his cause of action accrued under that prong when he purchased the Annuity in 2004. *See Certain Underwriters at Lloyd's v. Milberg LLP*, 2009 WL 3241489, at *5 (S.D.N.Y. Sept. 30, 2009) ("When the plaintiff alleges fraud in the inducement to purchase an insurance policy, the six-year limitations period begins to run on the date the policy is purchased." (citing *Goldberg v. Mfrs. Life Ins. Co.*, 672 N.Y.S.2d 39, 43 (N.Y. App. Div. 1998))). Plaintiff's action would therefore be untimely because it was commenced more than six years after this date.

June 2015 complaint is untimely under the laws of both states. Conversely, if Plaintiff should not reasonably have discovered the alleged fraud until January 2015 (when he actually calculated the interest rate for past years), then his June 2015 complaint is timely under the laws of both states. Therefore, the differences between the laws of Massachusetts and New York are immaterial, and the dispositive question is simply when he reasonably should have discovered the purported fraud. If it was in January 2004 or January 2012, his claim is untimely under the laws of both states, but if it was in January 2015, his claim is timely under the laws of both states.

The general rule is that "factual disputes concerning when a plaintiff knew or should have known of his cause of action are to be resolved by the jury." *Riley v. Presnell*, 565 N.E.2d 780, 787 (Mass. 1991); *see also Menke v. Glass*, 898 F. Supp. 227, 233 (S.D.N.Y. 1995) ("[T]he determination of whether a plaintiff has exercised sufficient diligence is normally a question of fact for the jury to decide."). Read in conjunction with the standard of review for a motion to dismiss, this sets a high bar for a defendant seeking fix the date of a reasonable discovery as a matter of law at the motion to dismiss stage. *Cf. Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 197 (1st Cir. 2001) (to succeed at motion to dismiss stage, defendant's assertion of affirmative defense "must 'leave no doubt' that the plaintiff's action is barred" (quoting *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir. 1998))); *Topps Co. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 258 (S.D.N.Y. 2005) (even at summary judgment stage, where a defendant's burden is lighter, "a defendant seeking summary judgment based on plaintiff's failure to timely discover fraud faces considerable hurdles").

The case of *Genovesi v. Nelson*, 5 N.E.3d 571 (Mass. App. Ct. 2014), presents similar facts in the same procedural context as the instant case. Asked to determine when the plaintiff reasonably should have discovered the alleged fraud perpetrated by his financial advisor, the court held that "the reasonableness of his actions in the circumstances is a question of fact that is not appropriately resolved on a motion to dismiss." *Id.* at 575; *see also First Choice Armor & Equip., Inc. v. Toyobo Am.,*

*Inc.*, 717 F. Supp. 2d 156, 160 (D. Mass. 2010) ("Ascertaining reasonable diligence is generally a 'fact-dominated enterprise' and, in most circumstances, a determination of 'when a plaintiff knew or should have known of its cause of action is one that . . . will be decided by the trier of fact.'" (quoting *Borden v. Paul Revere Life Ins. Co.*, 935 F.2d 370, 376 (1st Cir. 1991) and *Taygeta Corp. v. Varian Assocs., Inc.*, 763 N.E.2d 1053, 1063 (Mass. 2002))); *Vilsack v. Meyer*, 96 A.D.3d 827, 828 (N.Y. App. Div. 2012) ("Ordinarily, an inquiry into when a plaintiff should have discovered an alleged fraud presents a mixed question of law and fact.").

Taking Plaintiff's allegations to be true and drawing all reasonable inferences in his favor, the court cannot, as a matter of law, determine that Plaintiff should reasonably have discovered the discrepancy in interest rates earlier than he actually did in January 2015. Ambiguous documentation leads to a factual question regarding the discoverability of a claim. *See Foisy v. Royal Maccabees Life Ins. Co.*, 356 F.3d 141, 146 (1st Cir. 2004). Here, the ambiguity of the representations and materials allegedly provided by Defendants is the most important fact leading to the court's conclusion. The marketing materials Plaintiff received prior to his purchase of the Annuity, as well as the certificate provided following his purchase, stated the Minimum Guaranteed Interest Rate would be 3%. The endorsement attached to the certificate did state that the Minimum Guaranteed Interest Rate had been changed to 1.5%, but this flew in the face of Defendants' marketing materials and the rest of the documentation, and the practical effect of this change would have been difficult to notice, given that the actual interest rate stayed above 3% for the next several years.

It is plausible that a reasonable person would have viewed the single sheet of paper mixed in with the rest of the documentation as ambiguous in light of the marketing materials, the rest of the documentation, and the actual performance of the Annuity. The clash between the marketing materials and certificate package, on the one hand, and the single sheet of paper containing the endorsement, on the other hand, created an ambiguity that was entirely of Defendants' making. This

ambiguity was not necessarily resolved by the brief nature of the endorsement, because the endorsement remained at odds with the rest of the documentation and Defendants' marketing materials. *See id.* ("[The defendant], however, confuses brevity with clarity. It is the policy's ambiguity—unmitigated by the relatively short length—that made [the plaintiff's] claim unknowable."). This ambiguity was perpetuated by the fact that the Annuity's interest rate stayed above 3% for many years, and when it finally dipped below 3% in 2011, it only fell to 2.8%. This relatively small difference, combined with the fact that the annual statements did not explicitly state the interest rate and instead required consumers to calculate it themselves, renders the court unable to find as a matter of law that Plaintiff should have discovered the discrepancy at a certain time.

The marketing materials, documentation, and actual performance of the Annuity obscured the actual Minimum Guaranteed Interest Rate, and, as in *Foisy*, the ambiguous nature of the Annuity distinguishes this suit from cases like *Fay v. Aetna Life Ins. & Annuity Co.*, 307 F. Supp. 2d 284 (D. Mass. 2004) and *Loguidice v. Metro. Life Ins. Co.*, 336 F.3d 1 (1st Cir. 2003). A further distinction is that these cases, as well as others cited by Defendants in favor of determining the reasonableness of Plaintiff's actions as a matter of law, were decided on summary judgment after an evidentiary record bearing on the question of reasonableness had been developed. See *Fay*, 307 F. Supp. 2d at 294; *Loguidice*, 336 F.3d at 2. The court's own research has revealed that other cases supporting Defendants' position were decided at the summary judgment stage, rather than pursuant to a motion to dismiss. *See Patsos v. First Albany Corp.*, 741 N.E.2d 841, 846 (Mass. 2001); *Quigley v. Unum Life Ins. Co.*, 688 F. Supp. 80, 81 (D. Mass. 1988).

"When, as here, the parties press different events as triggering accrual, the factual inquiry focuses on which was the first event reasonably likely to put the plaintiff on notice that the defendant's conduct had caused him injury." *Szymanski v. Bos. Mut. Life Ins. Co.*, 778 N.E.2d 16, 20 (Mass. App. Ct. 2002). "'The issue . . . is not whether, as a matter of law, reasonable consumers

would be misled in a material way, but whether that prospect is enough to create a question of fact.'"
*Id.* at 26 (quoting *Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 604 (N.Y. 1999)). It may
well be that discovery reveals, or a jury decides, that Plaintiff should reasonably have discovered the
interest rate discrepancy in 2004 or 2012, but given the ambiguity introduced by Defendants' own
documentation, it is also plausible that a factfinder could determine that it would not have been
reasonable for Plaintiff to discover the effect of Defendants' craftiness until 2015. Given the general
rule in favor of jury determinations of reasonableness and the standard of review, and drawing all
reasonable inferences in Plaintiff's favor, the court cannot properly decide the reasonableness of
Plaintiff's actions at the motion to dismiss stage. The court "conclude[s] that the triggering event
cannot be pinpointed as matter of law, but poses a question of fact" that is properly left to the
discovery process and, possibly, a jury. *Id.* at 20. As such, the motion to dismiss Count II is denied.

### C.    Chapter 93A (Count III)

Defendants argue Count III should be dismissed because New York's consumer protection
laws, and not Chapter 93A, apply to Plaintiff's claims. In a choice of law analysis, "[t]he first step is
to determine if there is a difference in the substantive laws of the two jurisdictions." *Mear v. Sun Life
Assurance Co. of Can. (U.S.)*, 2008 WL 245217, at *4 (D. Mass. Jan. 24, 2008). There are clear
differences between the New York and Massachusetts statutes. The two statutes set different
standards for what qualifies as actionable conduct. *Compare Schlessinger v. Valspar Corp.*, 991 N.E.2d
190, 193 (N.Y. 2013) (using relatively high New York standard of practices "that tend[] to deceive
consumers") *with St. Paul Fire & Marine Ins. Co. v. Ellis & Ellis*, 262 F.3d 53, 66 (1st Cir. 2001)
(noting more lenient Massachusetts standard relating to any action that falls within the "'established
concept of unfairness'" (quoting *Commercial Union Ins. Co. v. Seven Provinces Ins. Co.*, 217 F.3d 33, 40
(1st Cir. 2000))). Additionally, potential damages are very different under each statute. In New York,
any trebling of damages is capped at $1,000. *See* N.Y. Gen. Bus. Law § 349(h). In contrast, under

Chapter 93A, the court may award treble damages with no upper limit. *See* Mass. Gen. Laws ch. 93A, § 9(3A).

When making a choice of law analysis, Massachusetts courts apply "a functional approach that responds to the interests of the parties to determine which law applies." *Mear*, 2008 WL 245217, at *4. A variety of factors that help determine which state's law to apply: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Cornwell Entm't, Inc. v. Anchin, Block & Anchin LLP*, 2013 WL 2367849, at *2 (D. Mass. May 28, 2013) (quoting Restatement (Second) of Conflict of Laws § 145 (1971)). These contacts should be evaluated according to their relative importance with respect to the particular issue. *See id.*

As Defendants point out, Plaintiff lives in New York, Plaintiff bought and received the Annuity in New York, New York law controls the regulation of the Annuity, and New York has an interest in protecting consumers within its borders, such as Plaintiff. On the other hand, as Plaintiff points out, MassMutual is domiciled in Massachusetts, MassMutual is alleged to have designed and distributed the allegedly fraudulent advertising from Massachusetts, and Massachusetts has an interest in preventing fraud from emanating from its borders. Application of these factors is a fact-specific inquiry in which both sides often have arguable points in their favor. Based on these particular facts, the court finds that the balance of the factors points to the application of New York consumer protection law, with the most important fact being that Plaintiff is a consumer in New York. Accordingly, New York consumer protection law provides the more appropriate shield to protect Plaintiff, and Count III is dismissed because Chapter 93A does not apply.

## VI.   CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss (Dkt. No. 25) is

ALLOWED with respect to Counts I and III and DENIED with respect to Count II.

It is So Ordered.

        /s/ Mark G. Mastroianni
        MARK G. MASTROIANNI
        United States District Judge