UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JESSE ARONSTEIN, Individually and on Behalf of All Others Similarly Situated<br>    Plaintiff,<br><br>v.<br><br>MASSACHUSETTS MUTUAL LIFE INSURANCE CO. and C.M. LIFE INSURANCE COMPANY,<br>    Defendants. | Civil Case No. 15-12864-MGM |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION TO COMPEL
(Docket No. 76)

Plaintiff Jesse Aronstein ("Aronstein") moves to compel defendants Massachusetts Mutual Life Insurance Company and C.M. Life Insurance Company (collectively referred to herein as "MassMutual") to provide documents that MassMutual claims are not relevant to the claims asserted in Aronstein's Second Amended Complaint and to produce unredacted copies of documents produced by MassMutual subject to redactions of what the company claims is irrelevant content. For the reasons set forth below, Aronstein's motion to compel is GRANTED.

I.     ALLEGATIONS IN SECOND AMENDED COMPLAINT

The parties are familiar with the facts of the case and of this particular dispute and so the court provides only a brief summary of the background before setting forth its analysis of the parties' discovery disputes. Aronstein is pursuing a putative class action against MassMutual (Dkt. No. 56 at 1, ¶ 1). He seeks to represent a class of individuals who purchased Odyssey Annuity contracts from MassMutual with a minimum guaranteed interest rate ("MGIR") lower than the rate advertised by MassMutual (*id*.). Aronstein has agreed to limit the putative class to purchasers in the state of New York where Aronstein is domiciled. He alleges that he purchased a "MassMutual Odyssey: A Fixed Annuity Product" ("Odyssey Annuity") on or around January

1

7, 2004 at a time when MassMutual falsely advertised the Odessey Annuity as providing an MGIR of 3% in written marketing materials (*id.* at 6, ¶¶ 19-21). When Aronstein received the Odyssey Annuity Contract/Certificate package, it included a certificate schedule, which represented that Aronstein was guaranteed an MGIR of 3% (Dkt. 56-3 at 5). The package also contained a one-page guaranteed interest rate endorsement which stated that the MGIR had been changed to 1.5% (*id*. at 23).

From 2004 through 2015, Aronstein periodically received statements from MassMutual which included a record of the total interest earned during the statement period. The statements did not set forth the rate at which interest was being paid (Dkt. No. 56 at 11, ¶ 44). In January 2015, Aronstein received the annual statement for 2014. He calculated the rate at which interest had been paid in 2014 and discovered that the rate was about 2% (*id.*, ¶ 45). MassMutual responded to Aronstein's resulting inquiry by disclosing that Aronstein had received an interest rate of less than 3% starting in 2011 and justifying the rate at which interest had been paid by reference to the guaranteed interest rate endorsement (*id.* at 11-12, ¶ 48).

In Aronstein's second amended complaint, he asserts claims of fraud in the inducement (Count I); Violation of New York General Business Law § 349 (Count II); Violation of New York General Business Law § 350 (Count III); and Breach of Contract (Count IV) (Dkt. No. 56 at 15-20).

II.  BACKGROUND RELEVANT TO DISCOVERY DISPUTE

In MassMutual's answers to interrogatories, the company represented that it used the structure about which Aronstein complains – marketing materials and a certificate schedule indicating a 3% MGIR and a guaranteed interest rate endorsement purporting to decrease the MGIR – from January 2004 through May 2005 (Dkt. No. 79 at 3). In responding to Aronstein's

discovery requests, MassMutual takes the position that the only documents that are within the realm of relevant information for discovery purposes are documents concerning Odyssey Annuity products sold in New York from January 2004 through May 2005. On this basis it has declined to produce documents responsive to the following documents production requests served by Aronstein:

> (1) [O]ne form Odyssey annuity contract representative of each instance in which the . . . MGIR was changed in New York between 2005 and 2008; and for any MGIR change to the Odyssey in New York between 2005 and 2008, all documents and correspondence relating to that change in the MGIR; and
>
> (2) [O]ne form non-Odyssey annuity contract representative of each instance in which the MGIR was changed in New York between January 1, 2004 and December 31, 2008; and for any MGIR change to any non-Odyssey annuity in New York between January 1, 2004 and December 31, 2008, all documents and correspondence relating to that change in the MGIR; and
>
> (3) [A]ll documents MassMutual previously produced in redacted form in unredacted form.

(Dkt. No. 76 at 1-2).

    III.    ANALYSIS

Federal Rule of Civil Procedure 26(b) provides, in pertinent part, that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The party seeking discovery over the opposing party's objection has the initial burden of demonstrating the relevance of the requested information. *See Diaz-Padilla v. Bristol Myers Squibb Holding Ltd. Liability Co.*, Civil No. 04-1003 (PG/GAG), 2005 WL 783076, at *2 (D.P.R. Apr. 4, 2005) (citing *Caouette v. Office Max, Inc.*, 352 F. Supp. 2d 134, 136 (D.N.H.

3

2005)). This burden is not onerous. Once the possibility of relevance is shown, the burden shifts to the party opposing disclosure to show that the discovery is improper. *See id.* (citing *Condit v. Dunne*, 225 F.R.D. 100, 106 (S.D.N.Y. 2004)); *see also BPP Retail Props., LLC v. N. Am. Roofing Servs., Inc.*, 300 F.R.D. 59, 61 (D.P.R. 2014) (the party resisting discovery has the burden of showing specifically how the documents requested are not relevant or how the request at issue is overly broad, burdensome, or oppressive). "Relevance under Rule 26(b) is broadly defined, 'although it is not without ultimate and necessary boundaries.'" *Ogden v. Bumble Bee Foods*, 292 F.R.D. 620, 622 (N.D. Cal. 2013) (quoting *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006)). The party resisting discovery "bears the burden of establishing that compliance with the request is unduly burdensome." *Hennigan v. Gen. Elec. Co.*, No. 99-11912, 2010 WL 4189033, at *3 (E.D. Mich. Aug. 3, 2010).

1. Documents Concerning Possible Changes to the Odyssey MGIR From June 2005 Through December 2008

Aronstein asserts relevance as to these documents on three grounds. First, he asserts that notwithstanding MassMutual's interrogatory answer, it is possible that production of documents from June 2005 through December 2008 relating to the Odyssey Annuity will show that MassMutual continued to offer the Odyssey Annuity in the same or in a very similar form through December 2008 (Dkt. No. 77 at 3). Aronstein points out that he did not define a class period in his Second Amended Complaint and claims he is entitled to do so on the basis of information obtained in discovery. Thus, while MassMutual apparently asserts, on the basis of its interrogatory answer, that the potential class period ends in May 2005 because it ceased relying on the guaranteed interest rate endorsement at that time, Aronstein argues simply that he is entitled to test that assertion through discovery.

4

Second, Aronstein contends that even if the evidence bears out that MassMutual ceased relying on the guaranteed interest rate endorsement after May 2005, evidence of how MassMutual handled the MGIR issue in connection with the Odyssey Annuity after May 2005 is still relevant as relevance is defined for purposes of discovery. This is so because discovery may show that MassMutual's representations about an MGIR in connection with Odyssey Annuities purchased in 2005 through 2008 arguably continued to be ambiguous or misleading. If MassMutual's communications on the topic, or lack thereof, were sufficiently similar to MassMutual's representations to Aronstein, individuals who purchased Odyssey Annuities in the time period from June 2005 through December 2008 could potentially be members of the class Aronstein seeks to represent. Alternatively, Aronstein contends, changes to the Odyssey Annuity documents subsequent to May 2005 could, by contrast with the documents Aronstein received, "shed light" on whether the marketing materials in use by MassMutual when he purchased an Odyssey Annuity were misleading (Dkt. No. 77 at 4).

Plaintiff has satisfied his threshold burden of demonstrating relevance for purposes of discovery of documents concerning any modifications or attempted modifications to the Odyssey's MGIR from May 2005 through December 2008. First, Plaintiff is entitled to test MassMutual's assertion that it discontinued its use of the guaranteed interest rate endorsement in May 2005. Second, in a class action, a plaintiff is required to prove, *inter alia*, that his claims are "sufficiently similar" to the claims of other class members such that "prosecution of the class representative's case will benefit the entire class." *Van West v. Midland Nat. Ins. Co.*, 199 F.R.D. 448, 452 (D.R.I. 2001). Whether individuals who purchased an Odyssey Annuity between June 2005 and December 2008 have a basis for claims for fraud or breach of contract against MassMutual, and whether such claims, if any, are sufficiently similar to Aronstein's

5

claims, such that he could represent a class of Odyssey Annuity purchasers from January 2004 through December 2008 are questions that should, depending on what MassMutual produces in discovery, be resolved at the class certification stage rather than decided *sub silentio* by a limit on discovery. *See Salgado v. Land O'Lakes*, No. 1:13-CV-0798-LJO-SMS, 2014 WL 7272784, at *3 (N.D. Ca. 2014) (class action "discovery is likely warranted where it will resolve factual issues necessary for the determination of whether the action may be maintained as a class action, such as whether a class or set of subclasses exist") (citing *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009); *Kamm v. Ca. City Dev. Corp.*, 509 F.2d 205, 210 (9th Cir. 1975)).

Alternatively, documents relating to any changes in the MGIR MassMutual paid on Odyssey Annuities purchased in or after June 2005 through December 2008 and any communications related to implementing those changes may be relevant to the feasibility of clearer forms of communication about the MGIR with Odyssey Annuity purchasers in the 2004-2005 time frame, even if the discovery does not lead to evidence that is itself admissible. *See Mowbray v. Waste Mgmt. Holdings, Inc.*, 45 F. Supp. 2d 132, 141 (D. Mass. 1999) (Federal Rule of Evidence 407 does not apply to evidence of subsequent remedial or precautionary measures, such as a restatement of earnings, in connection with a breach of contract claim because the breach of contract claim does not require proof of fault); Fed. R. Evid. 407 (if disputed, Rule 407's prohibition on evidence of the feasibility of precautionary measures does not apply).

    2. <u>Documents Related to Non-Odyssey Annuity Contracts Sold in New York from January 2004 to December 2008</u>

Aronstein represents that discovery has shown that MassMutual put together a team of employees who worked for more than two years on a guaranteed interest rate reduction project. According to Aronstein, discovery shows that this project addressed a group of MassMutual

6

annuity products that carried MGIRs, including the Odyssey Annuity.  The company initially intended to change the MGIRs for all of these annuity products simultaneously, but ultimately implemented the MGIR changes in phases.  MassMutual has declined to produce documents relating to the annuities other than the Odyssey Annuity that were addressed by the guaranteed interest rate reduction project (Dkt. No. 77 at 7).  Aronstein argues that documents related to all of the MassMutual annuity products that were addressed by the guaranteed interest rate reduction project are relevant because such documents can provide context for the company's decisions concerning a reduction of the MGIR for Odyssey Annuities sold after January 1, 2004.  Further, he contends that such documents may be relevant because if MassMutual marketed other annuity products with MGIRs using documents that were very similar to the documents it used to market the Odyssey Annuity at any time between January 1, 2004 through December 31, 2008, the potential class of plaintiffs in this putative class action might be expanded to include purchasers of other MassMutual annuity products in the 2004 to 2008 time frame and Aronstein might be a suitable representative of all members of such a class.

      In the court's view, Aronstein has adequately demonstrated the relevance of this discovery for the period from January 1, 2004 through December 31, 2008.  First, documents related to the work of the guaranteed interest rate reduction project on a group of annuities is reasonably calculated to shed light on why MassMutual purported to change the Odyssey MGIR by relying on documents that, in the presiding District Judge's words, resulted in a "clash between the marketing materials, the rest of the documentation and certificate package on the one hand, and the single sheet of paper containing the endorsement, on the other hand," "creat[ing] an ambiguity that was entirely of Defendants' making" (Dkt. No. 45 at 8).

Second, it is possible that Aronstein's discovery request related to annuities other than the Odyssey Annuity may have a bearing on the class, if any, that is certified in this case. To show typicality for class certification purposes, the claims of a class representative must be "'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Ogden*, 292 F.R.D. at 625 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "'The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). *Ogden* is a case in which the plaintiff and putative class representative complained about misleading advertising relating to *all* of the company's products. The plaintiff had purchased very few of those products. In *Ogden*, the court authorized discovery about some but not all products sold by Bumble Bee. The *Ogden* court reasoned that "[c]ourts employing the 'sufficient similarity test have found that in situations in which . . . . the products . . . are essentially identical, the named representative's injury essentially merges with those other claims.'" *Id.* Thus, in *Ogden*, the court authorized discovery concerning all products in which the advertising included claims substantially similar to the claims made about the products the plaintiff had actually purchased. *Id.* at 626.

Plaintiff represents that the discovery he has obtained shows that, at one point, MassMutual planned simultaneously to reduce the MGIRs on a group of annuity products – including the Odyssey Annuity – based on the work of the guaranteed interest rate reduction project. He further represents that MassMutual changed the MGIR on a non-Odyssey annuity on the same day that it changed the MGIR on the Odyssey Annuity (Dkt. No. 77 at 7). While the information before the court is less than complete, it is sufficient for the court to conclude that

8

Plaintiff is entitled to the limited discovery he seeks about non-Odyssey MassMutual annuity products that were under study in the guaranteed interest rate reduction project. Such discovery is relevant on the questions of whether MassMutual's communications about the MGIR for annuity products other than the Odyssey Annuity were substantially similar to the marketing materials, application, and related communications about the Odyssey Annuity's MGIR, and whether the products themselves were substantially similar. *See Ogden*, 292 F.R.D. at 626.

MassMutual has not shown that discovery related to Odyssey and non-Odyssey annuity contracts it sold in New York from January 2004 to December 2008 would be improper or unduly burdensome. MassMutual has represented that the documents concerning sales of the Odyssey Annuity and the structure of the Odyssey Annuity documentation changed in or around May 2005. It has declined to provide any discovery about these changes in structure and documents. The court does not agree with MassMutual that discovery about possible subsequent precautionary measures – i.e., less ambiguous communications about the MGIR – would necessarily be irrelevant. As to class certification, MassMutual may well prevail on a contention that Aronstein can, at best, represent himself and others domiciled in New York who purchased Odyssey Annuities between January 2004 and May 2005. That decision, however, should be made on a factual record that is sufficient to determine whether, on the question of the MGIR, the marketing materials and certificate packages of non-Odyssey annuities sold between January 1, 2004 and December 31, 2008 were substantially similar to the marketing materials and certificate packages of the Odyssey Annuity. *See Salgado*, 2014 WL 7272784, at *3.

The court credits the representation of MassMutual's counsel at the hearing that the company had some difficulty in locating information concerning the Odyssey Annuity MGIR reduction some thirteen years after the fact. Nonetheless, the company represents that it has

made a robust production of documents and information about the Odyssey Annuity and the company's use of an endorsement to make a purported change in the MGIR (Dkt. No. 79 at 2). There is nothing before the court to suggest that production of the additional information would be unduly burdensome in terms of the volume of material to be produced, the amount of time required for that task or the costs of doing so. Based on counsel's representation, the volume of documents already produced, when compared to the production in some other putative class actions, is relatively modest (Dkt. No. 77 at 5) and Aronstein's supplemental requests are narrowly tailored.

Based on these principles, the court concludes that Aronstein has made a sufficient showing that the two supplemental discovery requests he has propounded are relevant to his claims and that production of the documents by MassMutual would not be unduly burdensome or otherwise improper.

3. Redacted Documents

When MassMutual made its production to Aronstein, it redacted 164 pages of the documents that it produced. The company has represented to Aronstein that the redactions removed information about annuities other than the Odyssey Annuity that were under review in connection with the company's guaranteed interest rate reduction project (Dkt. No. 77 at 5). It appears likely, therefore, that the redactions were of information that is responsive to the two document production requests propounded by Aronstein that are the subject of the rulings herein, and that most, if not all, of the redacted pages will need to be produced in unredacted form in response to this Memorandum and Order.

In any event, as the parties are aware, this court is already on record as being of the view that "[r]edactions of documents that are responsive and contain some relevant information should

be limited to redactions of privileged information when, as in this case, there is a protective order restricting the use and dissemination of . . . sensitive information." *Sexual Minorities of Uganda v. Lively*, Civil Case No. 3:12-30051-MAP, 2015 WL 4750931, at *4 (D. Mass. Aug. 10, 2015). It remains the court's view that the weight of authority on this issue is on Aronstein's side. MassMutual's position that courts ordering the production of unredacted documents generally have done so for case specific reasons is not consistent with case law. To the contrary, many courts that have ordered the production of redacted information have relied primarily on the principles that Federal Rule of Civil Procedure 34 "requires documents to be produced as they are kept in the ordinary course of business and that '[t]here is no express or implied support' in the Rules of Civil Procedure for a procedure allowing 'a party [to] scrub responsive documents of nonresponsive information.'" *Beverage Distribs., Inc. v. Miller Brewing Co.*, Nos. 2:08-cv-827, 2:08-cv-931, 2:08-cv-1112, 2:08-cv-1131, 2:08-cv-1136, 2010 WL 1727640, at *4 (S.D. Ohio Apr. 28, 2010) (quoting *Orion Power Midwest, L.P. v. Am. Coal Sales Co.*, 2008 WL 4462301, at *2 (W.D. Pa. Sept. 30, 2008)). Furthermore, in this case, as in other cases where courts have ordered the production of unredacted documents, the parties have entered into a Stipulated Confidentiality Agreement (Dkt. No. 73), that will protect against the dissemination of confidential business information or its use for any purpose other than this litigation, further diminishing the risk of prejudice to the producing party. *See Sexual Minorities of Uganda*, 2015 WL 4750931, at *4.

To the extent MassMutual has made redactions to documents it produced on the grounds that the redacted information was not relevant, those documents should be produced to Aronstein in unredacted form except in instances where the redactions are of privileged material.

IV. CONCLUSION

For the foregoing reasons, Aronstein's Motion to Compel Defendant to Produce Unredacted Documents is GRANTED. Because MassMutual had a good faith basis for its discovery objections, an award of fees or costs would be unjustified. *See* Fed. R. Civ. P. 37(a)(5).

It is so ordered.

Dated: June 29, 2017                /s/ Katherine A. Robertson
                                    KATHERINE A. ROBERTSON
                                    U.S. MAGISTRATE JUDGE